## WILLIAMS *v.* WALDEN.

### Opinion delivered March 11, 1907.

1. WITNESS—COMPETENCY—TRANSACTION WITH INTESTATE.—In an action against an administrator to recover for services in nursing the intestate, plaintiff was incompetent to testify as ·to the services he performed, such testimoy relating to a "transaction" with intestate within the meaning of section two of the Schedule of the Constitution. (Page 140.)

2. PARENT AND CHILD—COMPENSATION FOR DOMESTIC SERVICE—PRESUMPTION.—An instruction that "where a child lives with a parent there is no presumption that the child rendering any ordinary domestic service is to receive pay therefor from the parent" was erroneous as implying that if the domestic service was extraordinary such a presumption would arise. (Page 141.)

3. SAME—WHEN CONTRACT IMPLIED.—Although the burden of proof is upon a son who claims a money recompense for personal services in nursing his· deceased father to .establish a contract, expressed or implied, to pay therefor, the jury should be instructed that if, under all the circumstances of the case, the services were of such a nature as to lead to a reasonable belief that it was the understanding of the parties that pecuniary compensation would be made for them, then the jury would find an implied promise. (Page 142.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; reversed.

#### STATEMENT BY THE COURT.

L. F. C. Walden presented to the administrator of the estate of R. E. Walden the following claim: To taking care of R. E. Walden during his last sickness in which he was confined to his bed for three years at $7.50 per month, $270. The account was duly verified. The administrator refused to allow it, and

it was presented to the probate court for allowance. The probate court refused the claim, and appellee, plaintiff below, appealed to the circuit court. There appellant, as administrator, filed an answer to the claim, which contained the following allegations:

"1. That the plaintiff is a son of R. E. Walden, deceased, and that the services for which pay is claimed were rendered the father without expectation of receiving or intention of giving pay on the part of either party.

"2. That the personal estate of the said R. E. Walden did not exceed in value the sum of $300, and that he left a wife, who took this property by operation of law.

"3. That all the real estate of the said R. E. Walden which he had at the time of his death, except the S. W. quarter of the N. E. quarter, 22-10-27, which was given to the widow for life by the heirs as her dower and homestead, was, by consent of all the parties in interest, partitioned by the Howard Chancery Court, and the respective rights of all the heirs of said R. E. Walden adjudicated and ascertained by decree of said chancery court rendered at the May, 1905, term thereof. That by virtue of said decree all of said lands, except the forty acres allotted to the widow as aforesaid, were sold at partition sale, and that the proceeds thereof have been divided according to the rights of the respective heirs.

"4. That any agreement to give the plaintiff any part of the homestead is void as being within the statute of frauds, and because it describes no definite land, and because this court, trying this case on appeal from the probate court, cannot enforce specific performance nor vest any interest in the plaintiff to the real estate of R. E. Walden, deceased.

"5. Because the plaintiff is not entitled to judgment as on contract on proof that R. E. Walden intended to give him certain lands. Premises considered, defendant prays that plaintiffs take nothing."

On behalf of appellee the evidence tended to show that R. E. Walden, the father of appellee, was an old man of about 85 years, in feeble health two or three years before he died, and for several months prior to his death was in a rather helpless condition. He was afflicted with chronic indigestion, and sometimes

would have bowel complaint. He was a large man, weighing between 180 and 190 pounds. He would have involuntary discharges from his bowels, had to be lifted, cleaned and dressed, and required the constant attention and services of some one to nurse him. The appellee for the most part attended to these duties. He was assisted some by his mother, who was also old and feeble. Occasionally other children of R. E. Walden would visit him, and during these times would render some assistance. But appellee lived with his father and mother, and the nursing of his father during all the time of his affliction and in his last illness was done chiefly by appellee. He washed his father's clothes because they were too offensive to put with the ordinary **wash.**

One witness, sister-in-law to appellee, who lived near by, and who was frequently at the home of R. E. Walden during the time appellee was nursing him, heard appellee's father say that he would pay appellee for it some day. The mother of appellee testified that appellee's father did not agree to give plaintiff anything for waiting on him, except that he wanted him to have the house and twenty acres of land. He never wrote that down, and there was no agreement to pay for the services. There was proof tending to show that the services rendered by appellee were worth $15 per month.

On behalf of appellant there was evidence that appellee had said repeatedly that he never intended to make any charge for waiting on his father; said before his father's death that it was his duty to wait on his father, and he was not going to neglect him, and told his brothers and sisters after his father's death "that he never dreamed of making any charge" for what he had done for his father.

At the instance of the plaintiff, the court instructed the jury as follows:

"1. The court instructs the jury that if you believe by a perponderance of the evidence that there was a contract, either express or implied, between R. E. Walden and the plaintiff, whereby said plaintiff was to receive compensation for his services in nursing the said R. E. Walden in his last sickness, you will find for the plaintiff, whatever amount you may believe from the evidence that he is entitled to, not exceeding $270.

"2. The court instructs the jury that if the plaintiff rendered extraordinary services in nursing and caring for R. E. Walden in his last sickness, and said services were accepted by the deceased, then the plaintiff would be entitled to recover under an implied contract, and you will find for the plaintiff."

The appellant duly saved his exceptions to the ruling of the court in giving these instructions. Appellant presented prayers for instructions to the effect that the chancery court of Howard County had adjudicated the interests of the parties in controversy in all the lands of R. E. Walden, and that the circuit court had no jurisdiction of that matter in this action, and that the adjudication of the chancery court in that matter was conclusive here. Also prayers to the effect that no verdict could be rendered in this case as upon a contract from proof that R. E. Walden intended or promised in his lifetime to give to the plaintiff any real estate. Also prayers for instructions that any promise or agreement of R. E. Walden to convey to his son real estate, if made, would have to be in writing, etc.

Appellant also asked the following:

"8. The jury are instructed that in case where a child lives with a parent, there is no presumption that the child rendering any domestic services is to receive pay therefor from the parent." (Refused.) Given after amendment so as to read, "ordinary" domestic service.

"10. The jury are instructed that in case of a child rendering domestic services to a parent there can be no recovery unless there is a contract, either express or implied, to pay for such services, and the burden is on the plaintiff in this case to either prove an express contract for the services, or a state of facts from which a contract is necessarily implied." (Refused.) Amended so as to read "ordinary" domestic services and given as amended.

"11. The jury are instructed that it takes two to make a contract, and the minds of the parties to a contract must meet on all essential parts of the agreement. (Refused.) The court added the words, 'express contract,' at the end and, as thus amended, gave the instruction."

Appellant duly excepted to the court's ruling in modifying and giving the instructions as modified. Other instructions were given at the instance of appellant.

The jury rendered a verdict for $240. Appellant's motion for new trial, containing assignments of error reserved at the trial, was overruled, and this appeal taken. Other facts stated in opinion.

*W. C. Rodgers,* for appellant.

1. The testimony of appellee with references to the services for which he claims pay in this case was incompetent and ought not to have been admitted. Sched. Const. § 2; 67 Ark. 318; 32 Ark. 337; 94 S. W. 927; 80 Ark. 277.

2. There was no proof of extraordinary services. The court's instruction with reference to extraordinary services, and the emphasis of that word, was improper and misleading.

3. The presumption is that domestic services rendered by the child to the parent are not rendered with the intention of charging for the work, and this presumption is not overcome by casual declarations that the recipient would pay for the services, or that the child should be paid. 96 N. C. 149; 29 Wis. 278; 111 Pa. St. 460; 22 S. W. 557; 47 Pa. St. 534; 8 Pa. St. 213; 7 Atl. 60; 29 Pa. St. 465; *Id.* 369; 120 Pa. St. 170; 77 Md. 494; 92 Ky. 556; 129 Pa. St. 922; 30 Mo. App. 176; 34 S. C. 255.

*Sain & Sain,* for appellee.

The record here does not show that appellee testified to any "transactions with or statements of the deceased." If there was an express or implied contract to pay for the services rendered, or if the services were of such nature, under all the circumstances, including the relation of the parties, as to lead to a reasonable belief that the parties understood that they were to be paid for, appellee is entitled to recover. 56 Ark. 382; 75 Ark. 191. If there was an implied promise to pay for the services, he was entitled to recover on a *quantum meruit.* 41 Mo. 445. Whenever a party avails himself of the benefit of services done for him, although without his express authority or request, the law supplies the formal words of contract, and presumes him to have promised an adequate compensation. 26 Ark. 360.

WOOD, J., (after stating the facts.) 1. The appellee testified in his own behalf as to the services he performed in nursing

his father. The testimony of appellee related to transactions had with the intestate by which appellee attempts to recover upon the strength of a contract, express or implied, to pay for such services. The suit is against the administrator, and under section 2 of the Schedule of the Constitution and the decision of this court in *Cash* v. *Kirkham,* 67 Ark. 318, the testimony was improper. See also *Jarvis* v. *Andrews,* 80 Ark. 277; *Wilson* v. *Edwards,* 79 Ark. 69; *Miller* v. *Jones,* 32 Ark. 337.

2. The court declared the law of this case in instruction number one given at the request of appellee. But the court erred in giving instruction number two requested by appellee; also in modifying requests for instructions numbered eight and ten, asked by appellant, by adding the word "ordinary" before the words "domestic service." Under the second instruction, if the services were found by the jury to be extraordinary, the law raised, *ipso facto,* an obligation on the part of the appellee's father to pay for same. It does not follow as matter of law that there is an implied contract or obligation on the part of the parent to pay because the child rendered extraordinary services. Such services, where proved, may be considered by the jury in determining the question as to whether there was an implied contract for compensation. But the question is still one for the jury, even if there were extraordinary services. The question is one of fact, not of law. In *Smith* v. *Meyers,* 19 Mo. 433, it is said: "In all such cases it will be a question for the jury, taking into consideration the nature and degree of the relationship, circumstances in life of the parties, and other matters which may affect it, whether there was any implied contract for compensation." *Hart* v. *Hart,* 41 Mo. 441.

Prayer for instruction number eight declared the law without the modification by the court, and this modification was improper, and rendered the instruction as given erroneous. Likewise the modification to instruction number ten. These instructions, taken together, told the jury in effect that in case of ordinary domestic services rendered the father by his child there is no presumption that the child is to receive pay for such services, and that the burden of proof in such cases is on the child claiming remuneration for such services to show a contract, express or implied, for compensation before he can recover. But that

this burden is discharged when the child shows a state of facts from which a contract is necessarily implied. The converse of the proposition which follows by adding the word ordinary before the words "domestic services," is that where the domestic services are "extraordinary" the presumption is overcome. The plain purport of these instructions, when taken in connection with instruction number two *supra,* was to tell the jury that appellee had met the burden of proof as to contract for compensation if he had shown extraordinary domestic services rendered his father, and that if the jury found that such services had been rendered the law implied an obligation upon the part of the father to pay for same. The instructions did not declare the law applicable to the facts, and were erroneous and misleading. The words "extraordinary" and "ordinary" should have been omitted from the court's charge.

In *Hogg* v. *Laster,* 56 Ark. 385, this court quoted from the Supreme Court of Massachusetts, where Chief Justice Shaw, speaking for the court, said: "That it would be quite competent for the jury to infer a promise from all the circumstances of the case; and that, although the burden of proof is upon the plaintiff, as in other cases, to show an implied promise, the jury ought to be instructed that if, under all the circumstances of the case, the services were of such a nature as to lead to a reasonable belief that it was the understanding of the parties that pecuniary compensation should be made for them, then the jury should find an implied promise and a *quantum meruit;* but, if otherwise, then they should find that there is no implied promise." *Guild* v. *Guild,* 15 Pick. 130.

The second instruction given at the instance of appellee was also misleading in that it allowed the jury to consider the question of the acceptance of the services by appellee's father in determining whether or not there was an implied contract.

The presumption is that services rendered by members of the same family, and especially between father and son, are gratuitous. Such services are enjoined by the reciprocal duties of the family relation, and are always presumed to have been prompted by natural love, rather than by the promise or the hope of pecuniary reward. "Courts are reluctant to infer a pecuniary recompense from the performance of filial or parental duties such

as humanity enjoins." Hence the burden is upon him who claims a money recompense for personal services performed, whether voluntarily, or upon the request of the other, to establish a contract, expressed or implied, for such consideration. Page on Cont. p. 1183, § 788; Schouler, Dom. Rel., § 269; Rodgers on Dom. Rel., § 483; 1 Beach on Contracts, § 655; *Reynolds v. Reynolds*, 92 Ky. 556; *Zimmerman v. Zimmerman*, 129 Pa. 229; In re *Kirkpatrick's Estate*, 34 S. C. 255. See also *Lewis v. Lewis*, 75 Ark. 191. The court did not err in refusing prayers for instructions relating to the partition of the lands of R. E. Walden in the chancery court. That matter was not germane to the issue here.

We find no reversible error in the rulings of the court upon other assignments of error in the motion for new trial. But for those indicated the judgment is reversed, and the cause is remanded for new trial.