CLERGET v. WILLIAMS.

Opinion delivered March 5, 1928.

1. WORK AND LABOR—CONTRACT TO PAY FOR SERVICES.—The contract which the law ordinarily implies to pay for services and maintenance is not presumed between near relatives living together in the family relation.

2. WORK AND LABOR—PROMISE TO PAY FOR ANOTHER'S SERVICES.—As a general rule, where a party accepts the beneficial results of another's services the law implies a previous request and a subsequent promise to pay.

3. EXECUTORS AND ADMINISTRATORS—IMPLIED PROMISE TO PAY FOR SERVICES.—In the trial of a case on appeal from a probate court order disallowing a niece's claim against her aunt's estate for her services, evidence *held* to justify a finding of an implied promise on the part of the aunt to pay for such services.

4.  EXECUTORS AND ADMINISTRATORS—PERSONAL SERVICES—EXCESSIVE
    AWARD.—A verdict for $800 for a niece's services in waiting on
    and attending to her aunt during the last six months of the
    latter's life, *held* excessive by $540; $10 a week, which the niece
    had earned at employment resigned by her, being sufficient, in the
    absence of evidence that she was a trained nurse or specially quali-
    fied, or that the duties were so much more arduous and trying
    than her former duties.

Appeal from Conway Circuit Court; *J. T. Bullock,*
Judge; reversed.

*Edward Gordon,* for appellant.

*Strait & Strait,* for appellee.

McHANEY, J.  For approximately three years before
the death of Mrs. Nancy E. Cowden, appellee, who was
her niece, lived in her home at Morrilton, Arkansas, with-
out charge for room and board.  During all of this time
appellee was employed as office girl in the office of Dr.
Gray of Morrilton, at a salary of $10 per week, with the
exception of the last six months of Mrs. Cowden's life.
In June, 1925, Mrs. Cowden fell, and so injured herself
that thereafter she was confined to her room, but not
entirely confined to her bed, and was unable to attend
to her usual household duties.  She remained in this
condition until the latter part of December, when she
died.  During this time, the last six months of Mrs. Cow-
den's life, appellee remained with her aunt, waited on her,
and attended to the usual household duties, and did not
work for Dr. Gray after the first of June.  Appellee's
father, who was a brother of Mrs. Cowden, was appointed
administrator of her estate, and his daughter, the appel-
lee, presented a claim to him against the estate for serv-
ices rendered her aunt in the sum of $3,675, which he
allowed, and directed an attorney who had been employed
to contest the suit of Charlie Wood against this same
estate, to abandon such contest.  For the facts in the
case of *Allnut* v. *Wood,* see the decision in that
case this day filed.  Shortly thereafter, the other heirs
of Mrs. Cowden filed a petition in the probate court, and
caused the removal of Williams as administrator, and
appellant, Clerget, was appointed in his place.  Clerget

thereafter disallowed the claim of appellee, which was
then presented to and disallowed by the probate court.
Appellee thereupon appealed from the order of disallow-
ance to the circuit court, and upon a trial of the case there,
before a jury, she obtained judgment for the sum of $800,
and the administrator has brought the case here for our
consideration.

The only question raised by this appeal is the suffi-
ciency of the evidence to sustain the verdict and judg-
ment appealed from, it being contended on the part of
appellant that, since appellee admitted that she had no
express contract, agreement or understanding with the
deceased, that she was to receive compensation for her
services, and being of near kin to the deceased, the law
will not imply a contract to pay for such services, under
the rule announced in the cases of *Hogg* v. *Laster,* 56 Ark.
382, 19 S. W. 975; *Lewis* v. *Lewis,* 75 Ark. 191, 87 S. W.
134; *Williams* v. *Walden,* 82 Ark. 136, 100 S. W. 898; and
*Nissen* v. *Flournoy,* 160 Ark. 311, 254 S. W. 540. The
rule as stated in the last case is as follows: "It is also
an elementary principle of law that the contract which
the law ordinarily implies to pay for services and main-
tenance is not presumed between parent and child, or in
any other case of near relationship, where the parties
live together and create the family relation."

As was also stated in the above case, "it is an ele-
mentary principle of the law of contracts that, where a
party accepts the beneficial results of another's services,
the law implies a previous request and a subsequent
promise." In that case the relationship was brother and
sister, and the court told the jury that the plaintiff could
not recover without establishing a special or express
promise to pay her, and further, that the evidence showed
the relationship between the claimant and the deceased
to be sister and brother, and that, where this relationship
existed, the law presumed the services were rendered
gratuitously. This court reversed the case on these
instructions, and further said:

"No hard and fast rule can be laid down, and every
case must be governed by its peculiar circumstances. It

is incumbent upon the claimant to show that, at the time the services were rendered, it was expected by both parties that she should receive compensation, but she may show this by circumstantial as well as by direct evidence. All the surrounding circumstances under which the services were performed may be proved."

The proof in this case shows that appellee rendered valuable and useful services to her aunt, and that, while there was no express promise to pay, yet it was discussed between them that a hired girl might be obtained for the sum of $3 per week, and her aunt expressed the wish that appellee should attend to and look after her wants and desires; that she discussed adopting appellee and the said Charlie Wood, to the end that they might inherit her estate, and the making of a will was also discussed, but neither idea was ever carried into execution. Under these circumstances, and others that might be detailed, we think it was quite competent for the jury to infer such a promise from all the circumstances in the case, under proper instructions from the court. No question is raised here regarding the correctness of the court's instructions, and an examination thereof by us discloses that the case was properly submitted to the jury. We are, however, of the opinion that the jury has rendered a verdict for an excessive amount, an amount not supported by any substantial testimony. At the time she quit work for Dr. Gray, appellee was earning the sum of $10 per week. It is not shown that she was a trained nurse, nor that she had any special or peculiar qualification for this particular work, nor that the duties were so much more arduous and trying as to make the services worth three and one-half times as much as she had been getting per week. It is shown that competent help could have been obtained for $3 per week, and we have concluded that $10 per week for a period of six months, or twenty-six weeks, is as much as the evidence authorizes a judgment to be entered for. If therefore the appellee will enter a remittitur of $540 within fifteen days, the judgment will be affirmed for $260; otherwise the cause will be reversed and remanded for a new trial.