BEAUCHAMP *v.* JERNIGAN.

4-3495

Opinion delivered June 4, 1934.

*Wm. F. Kirsch* and *Maurice Cathey,* for appellant.
*Jeff Bratton,* for appellee.

MEHAFFY, J. Hugh McConnell, who lived in Paragould, Arkansas, died on April 24, 1933. He was between the ages of 80 and 90. The appellee, Mary E. Jernigan, went to McConnell's house nine years before his death, and did the work in keeping and managing the home and also waiting upon McConnell. After McConnell's death, the appellee filed in the probate court of Greene County the following claim:

"Mary E. Jernigan v. Estate of Hugh McConnell, deceased.

"Mary E. Jernigan states that the estate of Hugh McConnell, deceased, is justly indebted to her in the sum of three thousand ($3,000) dollars for services rendered by her in keeping house, nursing, caring for and waiting upon the said Hugh McConnell for 9 years next preceding his death:

"From March 1, 1924-March 1, 1925... $200
"From March 1, 1925-March 1, 1926... 200
"From March 1, 1926-March 1, 1927... 200
"From March 1, 1927-March 1, 1928... 200
"From March 1, 1928-March 1, 1929.. 200
"From March 1, 1929-March 1, 1930... 500
"From March 1, 1930-March 1, 1931... 500
"From March 1, 1931-March 1, 1932... 500
"From March 1, 1932-April 5, 1933.... 500

"Total ........................................................$3,000

"I, Mrs. Mary E. Jernigan, do hereby state that the above and foregoing claims made by me against the estate of Hugh McConnell, deceased, is just, true, correct and unpaid; and that nothing has been paid or delivered toward the satisfaction of the demand herein made by me against said estate.

her
"(Signed)  Mary X E. Jernigan."
mark

The claim was presented to the administrator of the estate of Hugh McConnell, and disallowed. The claim was then presented to the probate court of Greene County. A hearing was had before a jury, and the jury returned a verdict in favor of appellee for $3,000.

The administrator prosecuted an appeal to the circuit court of Greene County, and the jury in the circuit court returned a verdict for $3,000 in favor of appellee. Motion for new trial was filed and overruled, and judgment entered for $3,000, and the case is here on appeal.

The undisputed evidence shows that appellee stayed at McConnell's house continuously for approximately nine years; that she was there at the time of his death.

The appellee testified that she was going on 71 years old and lived in McConnell's house for 9 years; no one else lived there except Sammy McDaniel, who lived there for a little while, and Enzie Thomas, witness' son-in-law, who boarded there the first four years. The only other members of the McConnell family who were there were visitors who stayed a week at a time. McConnell had six spells of sickness, and the sixth one took him away.

Mrs. Lena Fisher testified that she and her husband had operated the Fisher Drug Store, which adjoined the McConnell residence, for 23 years; she saw McConnell every day; Mrs. Jernigan lived there for 9 years most of the time, and performed services for him; she took care of the house, cooking, washing and ironing, and looked after him when he was sick, without help, except during the last illness, when there was a man there to help her. Witness said she could not say how much the services were worth in dollars and cents but they were worth a lot; she was the only one who pleased him, and her services were worth more than the services of anybody else. When he was sick, she waited on him, stripped beds, and washed quilts and blankets practically every day; heard McConnell say that he wanted Mrs. Jernigan to put in a claim at his death to take care of her as long as she lived; he would say to Mrs. Jernigan: "You will never lose anything by this. You will get your pay." Witness did not know of Mrs. Jernigan's getting any pay. Dr. Majors and Dr. Ellington waited on him. Prior to McConnell's last illness, Mrs. Jernigan would often take his breakfast to the bed; during his last illness Thomas was there night and day and did some of the disagreeable work, but Mrs. Jernigan did most of it. McConnell made a will and left his real estate to witness. During McConnell's last illness he and Mrs. Jernigan had a misunderstanding, and she threatened to leave him; witness went over to McConnell's house, and an agreement was made that he was to pay her $3.50 a week if she would stay on. This was

a short time before he died. Mrs. Jernigan lived with McConnell and got her board. McConnell paid for the medicines which he bought for Mrs. Jernigan. The only money witness ever saw him give to her was checks for household expenses during his last illness. This witness heard McConnell on several occasions say he wanted Mrs. Jernigan to get her pay.

Dr. Majors testified that he was McConnell's physician during his lifetime; did not know when Mrs. Jernigan came there, but it had been a long period of time; had several spells of sickness; Mrs. Jernigan did the housework, gave him his medicine and baths.

Enzie Thomas, son-in-law of Mrs. Jernigan, heard McConnell say he wanted her paid well. Mrs. Jernigan's work consisted of washing, scrubbing, giving him medicine, cooking, and general housework. Mrs. Jernigan waited on McConnell all the time that witness and his wife lived at McConnell's. Thomas testified that it would be worth $4,000 to do what Mrs. Jernigan had done for McConnell.

Dr. Ellington testified that during the last few years he would see McConnell two or three times a week; that he would look pretty gay and be down town; for the last few years McConnell was not able to work; he did not recall seeing Mrs. Jernigan wait on him. The last three or four weeks it was a job to take care of him.

H. S. Trice testified that for the past several years McConnell had been feeble, but that he was going around tending to his business most of the time. He had been for nine years in old age and feeble health, but was able to tend to his own business.

The will of Hugh McConnell was introduced in evidence, and the drug store and dwelling house adjoining was left to Mrs. Fisher. His will provided that his debts should be paid.

The evidence was sufficient to justify the jury in finding that appellee did the work for McConnell during his lifetime, and that it was McConnell's intention and he agreed to pay her for same.

As stated by the Texas court: "It is a delicate matter to allow a contract of the character of one under consideration to prevail, for the dead man cannot tell about the affair, and the testimony is usually in favor of the living, for the latter are usually the prime favorites as against those whose tongues are closed in death. Such being the condition of affairs, when such a contract is made the basis of recovery, it must be fully and satisfactorily proved." *Dyes's* v. *Rowe* (Tex. Civ. App.) 175 S. W. 1001.

But in the instant case the undisputed evidence shows that the appellee lived at McConnell's house and did his work for several years; that a portion of the work was very disagreeable, and the evidence also shows that she had not received any pay for it. Two juries heard the evidence, and found in favor of the appellee. A majority of this court, however, is of the opinion that she cannot recover for any work or labor done more than three years prior to McConnell's death.

"The following actions shall be commenced within three years after the cause of action shall accrue, and not after: first, all actions founded upon any contract or liability expressed or implied, not in writing." Crawford & Moses' Digest, § 6950.

Appellee claims $1,500 for the last three years, and she was awarded that amount by both juries. We have therefore reached the conclusion that she is entitled to recover $1,500, and that the rest of her claim is barred by the statute of limitations.

The judgment will therefore be modified and affirmed for $1,500. It is so ordered.