THE PEOPLES NATIONAL BANK, ADMR. *v.* COHN.

4-4788

Opinion delivered November 22, 1937.

*Donham & Fulk,* for appellants.

*Chrisp & Nixon,* for appellee.

SMITH, J. Sid Moss, a resident of Brooklyn, New York, left that city in an automobile in 1931, accompanied by a young man named Leo Cohn. They drove to Little

Rock, where they stopped at a tourist camp for about two weeks. Moss was looking for a location to make his future permanent home. Moss and Cohn drove from Little Rock to California, where they remained for a few weeks, but, preferring Little Rock, they returned to that city, where Moss resided until his death, which occurred January 3, 1935. Moss built a home, in which he resided with Cohn as a member of his family. Cohn remained with Moss from April 10, 1931, until September 25, 1933, at which time Cohn returned to New York on account of his health.

The undisputed evidence shows that Moss was a confirmed invalid, and he was paid disability benefits under an insurance policy which he had carried. In addition, he received monthly remittances from his wife, who remained in New York. He had a son, who went by the name of Raymond Brush, from whom he was estranged, in fact, Moss stated to more than one person in Little Rock that he had no children, and he never referred to his wife.

Cohn lived with Moss as companion, chauffeur, servant, nurse, and manager of his household, and had such charge of his personal affairs that a power-of-attorney was given him to discharge the duties which he performed. Cohn made all purchases for the house and paid for them with Moss' funds.

Dr. A. B. Tate, a neighbor and intimate friend of Moss, testified that he was at Moss' home nearly every day during Moss' life in Little Rock, and that Moss was a very sick man all the time. Moss' sight was much impaired, and he had to have some one with him all the time, and Cohn was with him constantly. Moss was able to attend to some of his more simple wants, but Cohn went with Moss whenever Moss left home, and would assist Moss across streets when they walked and drove him in the car when they rode. Cohn helped dress and undress Moss, who was partially paralyzed. Moss "was a dominating person," being of a very nervous disposition, but Cohn was attentive and patient. Witness had heard Moss speak of Cohn frequently in terms of great-

est affection, and they were like father and son. Witness heard Moss say he was going to leave his property to Cohn to pay him for his attentions. Cohn got his room and board at Moss' house. He was given a night off once a week, at which time he drove Moss' car, the operation and upkeep of which was paid by Moss. Moss frequently had guests at his home, and Cohn was occasionally allowed that privilege. Moss kept both a cook and yard servant in addition to Cohn.

Dr. Roe, who attended Moss in a professional capacity during Moss' residence in Little Rock, testified that Moss suffered from partial paralysis of his arm and leg, and had defective vision, and required constant attention, which Cohn rendered both during the day and at night. Cohn performed the duties of a practical nurse, which witness thought were worth from $25 to $35 per week. Cohn left Little Rock upon his advice and with the reluctant consent of Moss for treatment on account of loss of weight.

A Mrs. Dover, who operates the tourist camp where Moss and Cohn first stopped when they came to Arkansas, and by whom Cohn is now employed, and who saw much of Moss after he had built a home near her camp, testified that she knew the relationship between Moss and Cohn, and heard Moss speak of Cohn frequently in terms of gratitude and affection, and had heard Moss say that Cohn was to have pay for his services.

Mrs. Mary Byrd, who had been employed as a cook by Moss for eight months of the time Cohn lived with Moss, when asked whether Moss had ever talked with her about Cohn, answered: "He did all the time, and said he was going to make a will and leave everything to him."

John Lofton, an attorney, testified that at the direction of Moss he had prepared a will, a carbon copy of which he had retained. This testimony was objected to as incompetent. It does not appear that the will was ever executed. There was testimony, also, to the effect that Moss attempted to buy an interest in a business for Cohn's benefit.

When Cohn left Little Rock he did not return until after the death of Moss, when, finding that Moss had died intestate, he filed a claim against the estate of Moss for services in the sum of $3,000. This claim was disallowed by the administrator of the estate of Moss, but was allowed by the probate court in the sum of $1,500. Upon an appeal from the judgment of the probate court a trial was had in the circuit court, where the testimony, summarized above, was heard, and the court rendered judgment in Cohn's favor for $1,500. This appeal is from that judgment. This judgment was rendered upon the following finding made by the circuit court: "* * * There is proof, and the court finds that the deceased made declarations of his intention to pay the claimant, but that the payment was to be made at the time of his death rather than deplete his then property. * * * Having rendered the services on an expressed or implied contract for payment, the court finds that the claimant is entitled to pay and fixes the sum from the testimony at $1,500 to cover the period, in addition to his board and room, with the deceased."

After Cohn's departure, Moss employed a man named Ned Beckham, to render substantially the same services which Cohn had performed, and Beckham has a claim for his services against the estate of Moss.

Beloit Taylor, a practicing attorney in Little Rock, testified that as attorney for Beckham he attempted to probate a will executed by Moss, which devised property in small amounts to a number of persons and directed the payment of Beckham's expenses through a medical college. When witness learned that Moss had a son, whose name was not mentioned in the will, he abandoned the attempt to probate the will, and filed a claim against the estate of Moss for the value of the services which Beckham had rendered Moss. The merit of that claim is not before us.

Our own and other cases are to the effect that claims of this character are to be closely scrutinized, because of the opportunity for fraud. But it is the trial court, or jury, which thus considers and weighs the testimony

tending to establish the claim. When it has been adjudged valid by a jury, or by the court sitting as a jury, as in this case, we must give the same weight to the finding of the court or the verdict of the jury which is accorded in other cases, and that finding or verdict will not be disturbed if there is substantial evidence to support it. Measured by this test, we are unable to reverse the judgment here appealed from as being unsupported by sufficient testimony; indeed, the undisputed' testimony shows that Cohn rendered services of a very valuable nature.

It is true that, while doing so, Cohn lived with Moss as a member of the latter's family, and the presumption is, therefore, that the services were gratuitous, and the burden of proof is upon the claimant to establish otherwise. *Lineback* v. *Smith,* 140 Ark. 500, 215 S. W. 662; *Nissen* v. *Flournoy,* 160 Ark. 311, 254 S. W. 540; *Clerget* v. *Williams,* 176 Ark. 533, 3 S. W. (2d) 301; *Graves* v. *Bowles,* 190 Ark. 579, 79 S. W. (2d) 995.

At § 881, p. 281, vol. 24, C. J., chapter Executors and Administrators, it is said that this rule applies where the family relationship actually existed between claimant and decedent, although there was no consanguinity, affinity or adoption.

If, therefore, it be insisted that Cohn should not recover compensation because he lived as a member of Moss' family, it may be answered that even near relatives, bound by ties of blood, may recover under these circumstances, if there was an agreement, either express or implied, that compensation should be paid for the services rendered.

In the case of *Nissen* v. *Flournoy, supra,* a sister filed claim against her brother's estate. The jury was instructed at the trial of that case in the circuit court that the claimant "could not recover without establishing a special or express promise to pay her." In holding this instruction erroneous Judge HART said: "It was incumbent upon the plaintiff to show that she performed the services which were at the foundation of her claim, expecting, at the time, to be paid therefor, and that her

brother so understood it, or that, under the circumstances, he had sufficient reason to believe that she expected pay for her services.'' That holding was reaffirmed in the case of *Clerget* v. *Williams, supra,* as was also the declaration that the agreement to pay might be shown by circumstantial as well as by direct evidence.

It was not necessary, therefore, to prove an express contract to pay Cohn; that obligation will be implied, if the circumstances in proof establish the obligation to pay. This being true, it is not essential that the testimony establish a contract specifying the amount to be paid. The competent evidence does not establish what sum of money this would be. But a recovery is not to be defeated on that account. In such case, the court or jury will determine the reasonable value of the services under all the circumstances, as was done at the trial from which this appeal comes.

Here, both the circumstances and the positive testimony support the finding of the court, set out above, that, although Cohn lived with Moss as a member of Moss' family, there was in fact an agreement that Cohn should be paid for his services.

So much of the testimony of the attorneys mentioned as was admitted was competent. The will prepared by Lofton was not admitted in evidence, and if he made any use of it at all, which fact does not appear, it was merely to refresh his recollection as to his conversation with Moss.

At § 141 of the chapter on Witnesses in 28 R. C. L., p. 550, it is said: ''Communications relating to making of will generally.—An attorney who prepares a will cannot during the life of the testator testify to communications concerning the will made to him by the testator, or to the contents of the will itself, but it may be laid down as a general rule that, unless otherwise provided by statute, communications by a client to the attorney who drafted the will, in respect to the document, and all transactions occurring between them leading up to its execution, are not, after the client's death, within the protection of the rule as to privileged communications, in a

suit between the testator's devisees and heirs-at-law, or other parties who all claim under him. * * *."

The will testified to by Taylor was not offered in evidence, and his testimony tending to show that Beckham filed a claim for services rendered was not incompetent.

Cohn offered to testify as to the details of his contract and relationship with Moss; but this testimony was properly excluded under § 5154 of Pope's Digest. The other competent testimony, set out above, is sufficient to support the finding of the court that there was a contract, implied if not express, that Cohn should have compensation, in addition to his living, and a contract, either express or implied, suffices to sustain the recovery.

It is argued that there was no testimony that Moss had not paid Cohn for his services. There were only two witnesses who could have given definite testimony upon this subject. One of these was Moss, who was dead, and the other was Cohn, who was not permitted to testify, because, under the law, his testimony was not competent. It is true that Cohn presented no bill against Moss during Moss' lifetime; but it is true also, under the undisputed testimony, that he had a just expectation of being compensated in Moss' will.

The rules of law here involved are extensively annotated in a note to the case of *Carlson* v. *Krantz,* 172 Minn. 242, 214 N. W. 928, 54 A. L. R. 545. The annotator there says: "But if the services are rendered in pursuance of a mutual understanding that compensation is to be made by will, the value of the services may be recovered in an action at law, in the event no will is made, though, if rendered merely with the expectation, by the person rendering them, that they would be compensated by will, without a mutual understanding they do not constitute a valid claim."

Here, the proof is that there was not a mere expectation, but a contract, implied if not express, that Cohn should be paid for his services.

It is true that had Moss lived, something less than two years longer than he did live, the claim would have been completely barred by Cohn's inactivity in attempt-

ing to collect his demand, but the fact remains that the claim was not completely barred at the time of Moss' death. The inactivity on the part of Cohn in waiting for his pay raises no presumption of law that he had been paid. It was a mere circumstance to be weighed by the court in determining whether Cohn had a right to recover, and, if so, whether he had been paid for his services.

In the chapter on Payment in 48 C. J. 680, it is said that "The general rule is that the burden of proving payment is upon the party who alleges it," and several hundred cases are cited in support of the text quoted.

In the case of *Herrick* v. *Hayes*, 173 N. W. 110, decided by the Supreme Court of Iowa, a headnote reads as follows: "In action against nephew by uncle's administrator on nephew's note in which nephew counterclaims for accommodations furnished uncle, and proves that accommodations were furnished upon expectation of payment, administrator has burden of proving payment." In other words, the nephew had the burden of showing that the accommodations had been furnished upon his expectation of payment of the value thereof. That proof being made, the burden of showing payment was upon the administrator. See, also, 68 C. J., § 211, p. 591.

The compensation allowed by the court of $1,500 for a period of service covering 29 months and 15 days amounts to $51.70 per month, according to a calculation not questioned, and the testimony is sufficient to support the finding that this was the reasonable value of the services; but the time for which the compensation was allowed is excessive. The case of *Beauchamp* v. *Jernigan*, 189 Ark. 361, 72 S. W. (2d) 535, is decisive of that question. It was there held (to quote a headnote) that "A claimant who kept house for and waited upon decedent for nine years under an oral agreement to pay therefor, *held* not entitled to recover for any work done more than three years before decedent's death, under Crawford & Moses' Digest, § 6950."

Upon the authority of this case appellant requested the court to make the following declaration of law: "That where a claim is made for alleged services rendered to a decedent, the statute of limitations provided in § 6950 of Crawford & Moses' Digest applies, and the claimant is not entitled to recover for any such services, except such as were rendered within three years immediately preceding the death of decedent."

It was error to refuse this declaration. There could be no recovery except for such services as were rendered within three years immediately preceding the death of the decedent, which occurred January 3, 1935, so that there could be no recovery for services rendered prior to January 3, 1932. But Cohn quit the service of Moss on September 25, 1933, and could not, of course, recover for services after that date. The judgment should, therefore, have been only for services rendered between these dates, which would be, not 29 months and 15 days, but 1 year, 8 months, and 22 days, and compensation, for that period, figured at $51.70 per month, amounts to $1,072.41. The judgment must, therefore, be modified by reducing it to that amount, and as thus modified will be affirmed.