WILSON v. DODSON, ADMINISTRATOR.

4-6575                                    158 S. W. 2d 46

Opinion delivered January 26, 1942.

*John H. Shouse, Merle Shouse* and *J. Loyd Shouse,* for appellant.

SMITH, J.   J. H. McBee died April 7, 1939, at an advanced age, after a lingering illness, during a large portion of which time he was practically helpless, and required constant attention.   He was survived by five children.   One of these, a son, had lived all of his life on a small farm owned by his father.   He was a tenant and paid rent for the land he cultivated.   At the suggestion of the other heirs, he moved into his father's home, his mother being dead, and he and his wife gave his father the attention which the father's condition required.   He testified that the other heirs told him that if he would do this, he should have the farm upon his father's death.

Mr. McBee died intestate, and one Dodson qualified as administrator of the estate, and gave a deposition, offered in evidence at the trial from which is this appeal. The other testimony was also by depositions, the witnesses testifying, in addition to the administrator, being the claimants and the attending physician.   These depositions were taken February 28, 1941, and were read at the trial, which occurred July 28, 1941.   It does not appear upon what notice they were taken; but it does appear that no one representing the heirs or the estate participated in their taking, at least, there was no cross-examination of any witness, and there is no recital of the presence of anyone opposing the claims.

Before the trial from which is this appeal two of the heirs filed "Response and Objections" to the claims, in which they denied that the intestate father was indebted to claimants in any sum, and alleged "That in truth and in fact, up to the time of his (intestate's) death, the deceased supported, out of his own means and contributed in large measure to the support of claimant's family."   Protestants objected to the testimony above referred to as incompetent, and prayed that it be stricken and not considered.   This motion was overruled, and the claims were allowed, and from those orders is this appeal.

The claim of the son, amounting to $404, was for materials and labor in repairing the premises.   As to these the son was asked: "About the buildings—you kept them up?", and he answered: "I built all those down there for the last 25 year.   He said he wasn't going

to be out any more. He intended for me to have the place. He said I would get the farm if I would take care of them. I would buy the material and do the work myself. I would do the work and never charge for labor.''

This answer indicates that he charged for labor and materials extending over a period of twenty-five years, with no showing that any labor was performed or materials furnished at any time within the period of limitations.

The claim of the daughter-in-law was a single item reading as follows: ''Nursing the deceased 1,088 days, @ $1.00, $1,088.''

The testimony of the administrator and of the physician has but little relevancy, except that both stated that Mrs. McBee and her family took care of the intestate. Neither stated that there was any contract whereby claimants should be compensated, the effect of their testimony being simply that claimants lived with intestate as one family, and that they waited on intestate.

The claimants themselves did not testify that they had any contract with the intestate for compensating their services. They did testify that the other heirs agreed that the claimant son should have the farm as compensation for taking care of their father. But that agreement does not sustain a claim against the estate to compensate those services. It is sought here to charge the intestate's estate, and that may not be done unless there was a contract, express or implied, that the intestate should pay for the services.

There is no testimony that any such contract was made, nor is there any proof of any circumstances from which a contract must be implied, except that of the claimants themselves, and their testimony is incompetent for that purpose.

The very recent case of *Campbell, Admr.,* v. *Hammond, ante,* p. 130, 156 S. W. 2d 75, is conclusive of that question. The facts in the two cases are very similar. The rendition of the services, and the value thereof, were shown in each case by the testimony of the claimants,

without other testimony to substantiate the claims. The claims were allowed in each case upon this testimony alone, and, in reversing the former judgment, it was held that where appellees filed claims against the estate of appellant's intestate, they were, under § 2 of the Schedule to the Constitution and § 5154, Pope's Digest, incompetent to testify to transactions had with the intestate forming the bases of such claims, and that judgment was reversed, as this one must be, for the lack of competent testimony to support it.

However, if we might consider the testimony of the claimants, the judgment would still have to be reversed upon the authority of the case of *Lineback* v. *Smith,* 140 Ark. 500, 215 S. W. 662, where, quoting from the earlier case of *Williams* v. *Waldon,* 82 Ark. 136, 100 S. W. 898, it is said: " 'The presumption is that services rendered by members of the same family, and especially between father and son, are gratuitous. Such services are enjoined by the reciprocal duties of the family relation, and are always presumed to have been prompted by natural love, rather than by the promise or the hope of pecuniary reward. Courts are reluctant to infer a pecuniary recompense from the performance of filial or parental duties such as humanity enjoins. Hence the burden is upon him who claims a money recompense for personal services performed, whether voluntarily, or upon the request of the other, to establish a contract expressed or implied for such consideration'."

After thus quoting from the earlier case, it was there further said: "In the case of a child rendering domestic services to a parent there can be no recovery unless there is a contract either expressed or implied to pay for such services. Where a suit is brought by a child for services rendered the parent the burden is upon the child to prove that they were of such extraordinary character that the parent would not expect a child under the circumstances to render such services without compensation. They must be of a nature that they could not be attributed to any filial duty or obligation."

In our opinion, the testimony of the claimants fails to meet these requirements, and the judgment must be

reversed for this reason, if for no other, and as the cases appear to have been fully developed, the causes of action are dismissed.