CAPPS *v.* CLINE.

5-1128                                        297 S. W. 2d 654

Opinion delivered January 14, 1957.

*J. Loyd ·Shouse* and *Merle Shouse,* for appellant.

*A. J. Russell,* for appellee.

MINOR W. MILLWEE, Associate Justice. Martha Cox Cline filed her claim against the estate of her deceased sister, Elizabeth Harris, for keeping house, nursing and otherwise caring for decedent during the last three years of her life. This appeal is by certain other heirs of decedent from a judgment of the Probate Court in appellee's favor for $500, the amount claimed by her. After the appeal was lodged here Martha Cox Cline died testate and the cause was revived in the name of her executor.

According to the proof adduced by appellee, Mrs. Harris was living alone in Eureka Springs, Arkansas, about 10 years ago when she became ill and sent for appellee to come and take care of her. Appellee left her former home and came to Eureka Springs, where she lived with, nursed and kept house for her sister until the latter's death in March, 1956. When Zoe Harp, a friend and neighbor, frequently visited decedent and repeatedly tried to purchase certain items from her for her shop, Mrs. Harris would say: "It all belongs to Martha. She is here taking care of me and it all belongs to Martha." Mrs. Harris repeatedly told other friends and neighbors

who visited her that "she intended for Martha to have everything"; that "she had willed everything to Martha"; and that none of her other relatives would do anything for her. Mrs. Harris was confined to her bed most of the time and her sister did all the housework and nursed and otherwise cared for her during the last three years of her life and was paid nothing for these services. The trial court sustained appellants' objection to testimony by Martha Cline Cox that she came to live with Mrs. Harris at the latter's request but this was shown by other witnesses. Appellants offered no testimony in contradiction of that introduced by appellee.

Appellants contend the foregoing evidence was insufficient to establish any contractual relation between appellee and her deceased sister for payment of the services performed. They rely on the rule first announced by this court in *Williams* v. *Walden,* 82 Ark. 136, 100 S. W. 898, as follows: "The presumption is that services rendered by members of the same family, and especially between father and son, are gratuitous. Such services are enjoined by the reciprocal duties of the family relation, and are always presumed to have been prompted by natural love, rather than by the promise or the hope of pecuniary reward. Courts are reluctant to infer a pecuniary recompense from performance of filial or parental duties such as humanity enjoins. Hence the burden is upon him who claims a money recompense for personal services performed, whether voluntarily, or upon the request of the other, to establish a contract expressed or implied for such consideration." Some later cases in which the rule has been reaffirmed are: *Lineback* v. *Smith,* 140 Ark. 500, 215 S. W. 662; *Clerget* v. *Williams,* 176 Ark. 533, 3 S. W. 2d 301; *Graves* v. *Bowles,* 190 Ark. 579, 79 S. W. 2d 995; *The Peoples National Bank, Adm.* v. *Cohn,* 194 Ark. 1098, 110 S. W. 2d 42; *Wilson* v. *Dodson, Adm.,* 203 Ark. 644, 158 S. W. 2d 46. While the presumption of the gratuitous nature of the services rendered between members of the same family is ordinarily less strong as the relationship between the parties becomes more remote, the rule is generally applied to the relationship between brothers or sisters.

58 Am. Jur., Work and Labor, Sec. 27; *Graves* v. *Bowles, supra.*

The case of *Nissen* v. *Flournoy,* 160 Ark. 311, 254 S. W. 540, involved a claim filed by a sister against her brother's estate in which the nature of the services performed and the testimony generally were somewhat similar to those in the instant case and the jury was instructed that the claimant could not recover without establishing a special or express promise to pay her. In holding the instruction erroneous the court said: "No hard and fast rule can be laid down, and every case must be governed by its peculiar circumstances. It is incumbent upon the claimant to show that, at the time the services were rendered, it was expected by both parties that she should receive compensation, but she may show this by circumstantial as well as by direct evidence. All the surrounding circumstances under which the services were performed may be proved."

In several cases we have also approved the following statement by Justice SHAW in the leading case of *Guild* v. *Guild,* 15 Pick. (Mass.) 129: "That it would be quite competent for the jury to infer a promise from all the circumstances of the case; and that, although the burden of proof is upon the plaintiff, as in other cases, to show an implied promise, the jury ought to be instructed that if, under all the circumstances of the case, the services were of such a nature as to lead to a reasonable belief that it was the understanding of the parties that pecuniary compensation should be made for them, then the jury should find an implied promise and a *quantum meruit;* but, if otherwise, then they should find that there is no implied promise."

In *Graves* v. *Bowles, supra,* upon which appellants rely heavily, a brother filed certain claims against the estate of his deceased sister including one for nursing and caring for her during her last years. This court held substantial proof was lacking to indicate that decedent intended to repay her brother where the only competent evidence of a contractual relationship consisted of decedent's remarks to friends that she could

never repay her brother for his kindness and the existence of an alleged will which was refused probate and in which decedent left certain property to the brother after a specific bequest to her daughter.

Although there was no evidence of an express promise to pay in the instant case, we think the evidence was sufficient to warrant an inference of such a promise by the trial court. Appellee left her home to live with and perform valuable and burdensome services to her sister which were extraordinary and unusual in the sense that they were not incidental to the normal domestic relation subsisting between sisters. While the question presented is close, we hold the uncontradicted evidence sufficient to overcome the presumption of a gratuity and to sustain the finding of an implied agreement that appellee should be paid for her services. The judgment is, therefore, affirmed.