BERTHA L. CRAIG, Ex'x *v.* MRS. JESSIE HICKMAN

5-5054                                              447 S. W. 2d 120

Opinion delivered November 17, 1969

*Giles Dearing,* for appellant.

*Harold Sharpe,* for appellee.

LYLE BROWN, Justice. During the last sixteen months of the life of the testatrix, Mrs. Lillian Rowland, her daughter, Jessie Hickman, lived with Mrs. Rowland, assisting with her business affairs, and rendering nursing services. The trial court allowed Mrs. Hickman's claim for reimbursement of personal funds she used to pay Mrs. Hickman's bills and disallowed her claim for personal services. Bertha L. Craig, Executrix, appeals from the allowance for reimbursement. Mrs. Hickman cross-appeals from the court's denial of her claim for personal services. The principal issues involve the sufficiency of the evidence and the admissibility of Mrs. Hickman's testimony under Section 2 of the Schedule of the Arkansas Constitution, commonly known as the dead man's statute.

Mrs. Rowland was the owner and operator of a motel in Forrest City known as the Texas Court. In about 1963 Mrs. Rowland's physical condition became such that she was unable to do all the work incident to the operation of the business. From then until 1966 Mrs. Bertha Craig and her daughter, Mrs. Bigenault, stayed at the court and assisted Mrs. Rowland. During that time Mrs. Rowland's daughter, Mrs. Jessie Hickman, was temporarily residing in California. Her occupation was that of a registered nurse and her husband was a practical nurse. On a short visit back to Forrest City in January 1966, Mrs. Hickman was advised that Mrs. Craig and Mrs. Bigenault would have to relinquish their responsibilities with respect to Mrs. Rowland. Thereupon the Hickmans returned to Forrest City so that Mrs. Hickman could attend to her mother and assist in the business of the motel. Those were Mrs. Hick-

man's principal activities from February 1, 1966, until her mother died on June 1, 1967.

During the period of performing the described responsibilities, Mr. and Mrs. Hickman were jointly nursing a Mr. Henry, who was apparently an invalid requiring rather close attention both day and night. For those services the husband and wife team received a salary of $800 per month and an allowance of $300 monthly for Mr. Henry's expenses. Mr. Hickman performed the majority of services required by Mr. Henry, while Mrs. Hickman divided her time.

The Hickmans carried a personal checking account with the First National Bank of Wynne and it was in that account they deposited their emoluments from Mr. Henry. Mrs. Rowland had a business account at the First National Bank of Eastern Arkansas in Forrest City. That account was in the name of the Texas Court. Mrs. Rowland had a separate personal account which is not here involved.

During Mrs. Hickman's sixteen months experience at the motel, she allegedly spent considerable moneys from her bank account and from moneys borrowed. She justified those expenditures on the grounds that the motel was operating at a loss, that Mrs. Rowland's drug bills were very substantial, and that considerable repairs were required to be made on the motel. As result of those expenditures Mrs. Hickman filed a claim against Mrs. Rowland's estate. That claim may be divided into four parts and they will shortly be enumerated.

Considerable confusion in accounting resulted from the fact that the two bank accounts were used interchangeably and on more than one occasion both accounts were out of funds. Mrs. Hickman apparently tried to write checks on the particular account which at the time showed the better balance. Nevertheless business and

personal withdrawals were made from both accounts, and the trial court wisely appointed a master to audit the accounts.

The trial court, after hearing considerable evidence, inspecting some 275 exhibits, and having the benefit of the detailed findings of the master, came to these conclusions:

(a) The claim for $4,500 for moneys deposited to the Texas Court from personal funds was reduced to $4,152.35 and allowed; (b) the $997.12 claim for drugs was allowed in the sum of $802.90; (c) Mrs. Hickman claimed $2,799.64 for reimbursement because of bills paid for Mrs. Rowland from Mrs. Hickman's personal account, and that amount was reduced to $1,252.29 and allowed; (d) a miscellaneous claim for $95.09 reimbursement was allowed in full; and (e) Mrs. Hickman's claim for $3,800 for personal services was disallowed in toto.

The findings of the trial court that Mrs. Hickman actually expended from personal funds and for the benefit of Mrs. Rowland the amounts designated cannot be said by this court to be inaccurate. If those claims have been legally established, then we must affirm on direct appeal. More specifically, we must determine whether Mrs. Hickman's claims for expenditures are barred by Section 2 of the Schedule of the Arkansas Constitution, commonly referred to as the dead man's statute:

In civil actions no witness shall be excluded because he is a party to the suit or interested in the issue to be tried. Provided, that in actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party. Provided, further, that this section may be amended or repealed by the General Assembly.

First we consider Mrs. Hickman's claims other than the one for personal nursing services; the latter item will be treated in our discussion of the merit of the cross-appeal. Appellant contends that Mrs. Hickman's testimony violated the rule against a claimant testifying as to transactions with Mrs. Rowland.

With respect to Mrs. Hickman's testimony, she did not testify as to conversations with, or any directions from, her mother. She was permitted to relate that she had extensive and needed repairs done to the motel; that she negotiated personal loans and deposited the proceeds in the motel account; that she paid current bills, both personal and business; that she purchased such medicines and related needs as were prescribed by the doctors; that she personally handled the motel registrations and deposited the funds to the motel account; that she made purchases of groceries and miscellaneous items she considered necessary; and that she hired and paid the needed personnel for the motel. For practically all those expenditures and receipts she introduced receipted bills, cancelled checks, or deposit slips.

Because of the relationship of the parties and the recited nature of the transactions made, we do not think the testimony prohibitive under the statute. We had this to say in *Cline* v. *Miller,* 239 Ark. 104, 387 S. W. 2d 609 (1965) :

But the personal transaction or communication of the statute, no doubt, means a transaction or communication face to face, or by the parties in the actual presence and hearing of each other.

Appellant contends that the estate is not liable to Mrs. Hickman because there is no evidence of any contract authorizing her to make the claimed expenditures. The payments were made under circumstances from which the law implies an obligation to repay. Admissible evidence shows that appellee was placed in charge

of Mrs. Rowland's affairs. The bank, the doctor, contractors, and suppliers, all recognized an agency relationship between the two women by which Mrs. Hickman acted generally for her mother in numerous transactions. It is not seriously contended that the items for which the probate judge made allowances were unreasonable, unnecessary, or nonbeneficial to Mrs. Hickman; in fact, the great weight of the evidence is to the contrary. In such a situation the law implies an obligation of reimbursement. See 58 C. J. S. Money Paid, § 1—§ 3.

Appellee cross-appealed from the refusal of the trial court to allow her claim for personal services in caring for Mrs. Rowland and for operating the courts. First, we eliminate from consideration the testimony of appellee wherein she related her nursing services, running of errands, and general attendance to Mrs. Rowland's other personal needs. The numerous objections to that testimony should have been sustained as violative of Schedule, § 2 of the Constitution. *Campbell* v. *Hammond,* 203 Ark. 130, 156 S. W. 2d 75 (1941). Other testimony on those points was relatively scant. Cross-appellant produced witnesses who verified her presence at the courts for a considerable time and because of their intermittent observations had some knowledge of the assistance she rendered. However, we do not think the services established by competent evidence were of such extraordinary character as to give rise to an implied contract for payment. Other factors contribute to this conclusion. During the entire period Mr. and Mrs. Hickman continued to receive the salary and expense allowance for caring for Mr. Henry. Mrs. Hickman testified that occasional extra help was supplied to assist Mr. Hickman; however, we are not advised as to the period of time or the account from which that expense was paid. Maid service and extra nursing help were provided the courts and Mrs. Rowland and at the latter's expense; Mrs. Hickman was free to judge when those services were needed. Mrs. Hickman was still able to

devote some time to Mr. Henry's needs and to be with her husband daily if desired. It is also noteworthy that Mrs. Rowland was not a home bed patient until the last few weeks of her life; there is evidence that prior to that time she drove her own car and visited in Georgia, Alabama, and Florida. It is also noted that Mrs. Rowland deeded to her daughter a lot adjacent to the Texas Court. The value is not shown but there was located thereon a garage and filling station.

The law presumes that services rendered by a daughter to a mother are gratuitous, arising from natural love rather than hope of pecuniary reward. Hence the daughter has the burden of establishing at least an implied contract for payment. *Williams* v. *Walden,* 82 Ark. 136, 100 S. W. 898 (1907) *Russell* v. *Baumann,* 239 Ark. 830, 394 S. W. 2d 619 (1965). Services by a child to a parent may give rise to an implied contract if those services are of such extraordinary character "that the parent would not expect a child under the circumstances to render such services without compensation." *Lineback* v. *Smith,* 140 Ark. 500, 215 S. W. 662 (1919). Because of the circumstances we have enumerated, and the absence of substantial competent testimony, we are unable to say that Mrs. Hickman overcame the presumption.

Appellant complains because the trial court taxed one-half of the master's fee against her. The question is raised here for the first time; additionally, the point is not argued.

Affirmed on appeal and cross-appeal.