DAVIS *v.* NIPPER'S ESTATE.

4-7335 179 S. W. 2d 183

Opinion delivered April 10, 1944.

*Oscar E. Ellis,* for appellant.

*H. A. Northcutt* and *Chas. F. Cole,* for appellee.

SMITH, J. This is an appeal from the judgment of the chancery court, sitting in probate, disallowing the claims of Mr. and Mrs. Hale Davis, who are husband and wife, against the estate of one C. J. Nipper. They testi-

fied that Nipper was an elderly man, living alone, his wife being dead, and that they moved into the Nipper home in the spring of 1938, and that Mrs. Davis became the housekeeper, and did the household work, and on occasions worked in the field, and, in addition, operated an ice cream station, from which an income of $312 was derived, and sold chickens which she raised in the sum of $120, and that these sums were expended in the operation of the Nipper farm. Mr. Davis testified that he worked as a general farm hand, from 8 to 10 hours per day, and each testified that their services were reasonably worth $1.50 a day, making altogether a claim of $3,794, for which sum judgment was prayed, less a credit of $40 for a heifer.

In June, 1938, Nipper executed a written instrument, which he called a will, devising all of his property, both real and personal, to Davis and wife. This instrument recited that:

"The conditions of the above will is such as follows:

"The above named beneficiaries shall nurse and care for me in my sickness and contribute to my needs at all times; and at my death they shall erect a monument in exact size and dimensions as I now have erected at the grave of my deceased wife. This is my last will and testament."

This will was never probated, although it was found with Nipper's papers after his death, and no rights are claimed under it except as an evidence that Nipper intended that Mr. and Mrs. Davis should be compensated for their services.

Mr. and Mrs. Davis lived with Nipper until January 12, 1941, when they voluntarily left his home, and on June 19, 1941, Nipper executed another will in which he devised all his property to R. L. Blair, who was named as executor. Blair found both wills with Nipper's papers, and gave the first will to Mr. Davis, and probated the last one, and no question is made about the validity of the will which was duly probated. The claim here sued on was presented to Blair, as executor, who disallowed it, as did

also the court after hearing the testimony, and from that order and judgment is this appeal.

The judgment and decree must be affirmed for two reasons, the first being that Davis and wife offered no testimony in support of this claim, except their own and the unprobated will. The opinion in the recent case of *Wilson* v. *Dodson, Admr.*, 203 Ark. 644, 158 S. W. 2d 46, is decisive of this question. It was there said:

"The very recent case of *Campbell, Admr.*, v. *Hammond* [203 Ark. 130], 156 S. W. 2d 75, is conclusive of that question. The facts in the two cases are very similar. The rendition of the services, and the value thereof, were shown in each case by the testimony of the claimants, without other testimony to substantiate the claims. The claims were allowed in each case upon this testimony alone, and, in reversing the former judgment, it was held that where appellees filed claims against the estate of appellant's intestate, they were, under § 2 of the Schedule to the Constitution and § 5154, Pope's Digest, incompetent to testify to transactions had with the intestate forming the bases of such claims, and that judgment was reversed, as this one must be, for the lack of competent testimony to support it."

The writing referred to as the first will was not executed as an inducement to Mr. and Mrs. Davis to move into Nipper's home, as it was executed after they became members of this household. Moreover, it will be observed that if ever valid, as a will, it recited that the conditions of the will are that the beneficiaries should nurse and take care of him and erect a monument in his memory, all of which they failed to do. The court made the finding of fact that the writing was not a will, but would be considered as "A circumstance and partial explanation of the claimants continuing to live on the farm and work thereon." But the court made other findings of fact which led to the conclusion that the claim should not be allowed, and these are the second reason why the judgment should be affirmed.

Among these findings are the facts that: "Although prior to his death, they made no effort to have any settle-

ment of their claim with him during his lifetime," and also that "Claimants apparently had more property when they moved away than when they moved on Mr. Nipper's farm." Other findings of fact which we think the testimony sustains are, "That checks introduced show that Hale Davis was paid one-half of the AAA rental checks"; that "Several checks are in evidence (from Nipper to Mr. and Mrs. Davis) showing payments to appellants which they have not explained," and that two or more disinterested witnesses testified that appellants and Mr. Nipper had arrived at a settlement when appellants moved off the farm.

The testimony of the two witnesses referred to by the court as being disinterested was to the effect that they heard Nipper say in Mr. Davis' presence that "We have settled up; I have paid Juanita (Mrs. Davis) and Hale (Mr. Davis) what I owed them and they paid what they owed me," and this statement when made was not questioned by Davis. These witnesses were indefinite as to whether Mrs. Davis was present when this remark was made, but they testified that if not present "she was about the premises." This testimony was denied by appellants, but was accepted as true by the court.

Davis admitted that when he left the Nipper home he took with him 40 bushels of corn and two loads of hay, and it is undisputed that Nipper gave Davis and his wife several small checks which the court found were unexplained by the claimants. There were nine of these checks, and two of them to Mrs. Davis contained the notation that they were for picking cotton. A bank deposit slip was offered in evidence showing deposit by Nipper of $87.50, representing a rental payment by AAA, and a check from Nipper to Davis for $43.78, being one-half of this deposit, was also offered in evidence. Another check from Nipper to Davis bore the notation "For one-half of 1939-40 rental check from AAA." Mrs. Davis testified that Nipper gave her his chickens, and that she took the increase with her when she left.

Blair testified that after probating the last will, Mr. Davis told him that Nipper owed him $15 for taking

care of a mare, and that Davis then claimed no other amount.

We conclude the judgment should be affirmed for two reasons. First, there is no competent evidence of the debt, and, second, the preponderance of the evidence, both competent and incompetent, sustains the finding that no debt was due. The decree is, therefore, affirmed.