SMART, ADMINISTRATRIX, *v*. OWEN.

4-7634                                                  187 S. W. 2d 312

Opinion delivered May 7, 1945.

· *Melvin T. Chambers* and *A. R. Cheatham,* for appellant.

*Ezra Garner,* for appellee.

MILLWEE, J. On February 10, 1937, L. J. Smart, being indebted to appellee, W. E. Owen, executed a series of twelve notes to appellee, payable annually from February 10, 1938, to February 10, 1949, bearing interest at the rate of six per cent. from date until paid. Eleven of the notes were for $200 each and the last for $168.67. To secure this indebtedness, L. J. Smart and his wife, Audie Smart, on the same day executed and delivered a deed of trust to appellee covering 189 acres of land in Columbia county, which included their homestead. L. J. Smart farmed these lands and borrowed other moneys from appellee annually for the purpose of making crops. On February 18, 1938, he executed his note to appellee for $1,000 payable November 15, 1938, which was secured by a chattel mortgage or deed of trust on livestock, farming tools and equipment, and all crops produced by L. J. Smart in 1938. On June 6, 1938, L. J. Smart and Audie Smart executed another note to appellee for $550, secured by a deed of trust on six acres of land and all crops grown thereon.

On January 25, 1939, L. J. Smart paid appellee $1,600 which he had received from a sale of an oil and gas lease on a part of the lands included in the deed of trust of February 10, 1937. Upon receipt of this $1,600 payment, W. E. Owen signed and delivered the following receipt to L. J. Smart:

"Jan. 25, 1939.

"Received of L. J. Smart draft on Phillips Pet. Co. for the amount of $1,600, sixteen hundred dollars, to be credited on deed of trust held by me on SE, NW & NE, SW, Sec. 7, Twp. 18 S., R. 20 West and other lands.

"(Signed) W. E. Owen."

In October, 1938, L. J. Smart sold some cotton and delivered a $550 check to appellee which at that time was not credited to any particular security held by appellee.

On February 8, 1939, L. J. Smart went to the home of appellee and proceeded to make settlement and application of the $1,600 payment made on January 25, 1939, and the $550 payment made in October, 1938. As a result of this settlement between the parties, the note for $1,000 and chattel mortgage securing same, executed February 19, 1938, and the note and deed of trust of $550 of June 6, 1938, were surrendered and satisfied. At the same time, one of the $200 notes due February 10, 1939, under the deed of trust of February 10, 1937, was also delivered and marked paid. A credit of $82.65 was also made on the $200 note due February 10, 1940. Following this settlement and on March 18, 1942, L. J. Smart paid the balance of the note due February 10, 1940, and this note was surrendered and marked paid. L. J. Smart died May 9, 1942, and subsequent to his death his widow, Audie Smart, paid three more of the $200 notes which had been executed under the deed of trust of February 10, 1937. She paid two of these notes on February 10, 1943, and the third was paid April 7, 1943.

This suit was brought on May 18, 1944, by appellant, Audie Smart, as administratrix of the estate of her deceased husband, and the heirs-at-law of L. J. Smart, to

satisfy the deed of trust of February 10, 1937, and to cancel six of the twelve notes which had been executed by L. J. Smart. Appellants alleged that the full amount of the indebtedness secured by the deed of trust of February 10, 1937, had been paid, and claimed credit thereon for the $1,600 payment of January 25, 1939, as evidenced by the receipt; that appellee had refused to satisfy same after demand had been made. Appellee filed his answer and cross-complaint admitting receipt of the $1,600 payment on January 25, 1939, and execution of his receipt therefor, but alleged that L. J. Smart had subsequently elected to apply said amount on other notes and indebtedness which appellee alleged were secured by the deed of trust of February 10, 1937; that after payment of the other indebtedness, the balance was applied to the payment of one of the $200 notes and a credit of $82.65 on another of said notes. Payment of the first six notes issued under the deed of trust of February 10, 1937, was admitted. It was further alleged that six of said notes remained unpaid, and that appellant's refusal to pay the note due February 10, 1944, and their denial of the indebtedness represented by the remaining six notes entitled appellee to foreclosure.

The deed of trust of February 10, 1937, provided: "That said party of the first part, being indebted to the said W. E. Owen in the sum of $2,368.67 . . . and being desirous of securing the payment of the said sum of money, and all other indebtedness that may be due at or before foreclosure proceedings hereunder unto the said W. E. Owen. . . ." The defeasance clause of the deed of trust contained a similar reference to other indebtedness that might be due at or before foreclosure.

The trial of the issues on September 25, 1944, resulted in a decree dismissing the complaint of appellants and the cross-complaint of appellee. The chancellor found that the note of February 18, 1938, for $1,000 and the note of June 6, 1938, for $550 were not secured by the deed of trust of February 10, 1937, which appellants sought to cancel as a cloud on their title. It was also determined that it was the purpose of the receipt of January 25, 1939, that the payment be applied to the

twelve notes secured by the deed of trust, but that the evidence sustained the settlement and the application of payments made by the parties on February 8, 1939.

It is first insisted that the trial court erred in admitting testimony in contradiction of the receipt of January 25, 1939. When such objection was made at the trial, the court held such evidence permissible to explain the application made by the parties of the $1,600 for which the receipt was given. The general rule is that parol evidence is admissible to contradict, vary or explain an instrument which constitutes a mere receipt, and is not used or designed to embody and set out the terms and conditions of a contract. 97 A. L. R. 876. In 20 Am. Jur., § 1109, pp. 971-2, the following statement is found: "The rule excluding parol evidence to vary or contradict a writing does not apply to a mere receipt, at least a receipt not under seal. Parol evidence may be introduced to show to what demands the receipt was intended to apply or what instruments were referred to therein or that a mistake was made therein." And this court has held that a receipt is only *prima facie* evidence of its recitals and could be contradicted by other testimony. *Greer* v. *Laws,* 56 Ark. 37, 18 S. W. 1038; *J. H. Magill Lumber Co.* v. *Lane-White Lumber Co.,* 90 Ark. 426, 119 S. W. 822; *National Trust & Credit Co.* v. *Polk,* 123 Ark. 24, 183 S. W. 195.

Appellants rely upon the case of *Cache Valley Lumber Co.* v. *Culver Co.,* 93 Ark. 383, 125 S. W. 430. In that case Culver Co. executed an assignment and release to the Cache Valley Lumber Co. covering "all rights, choses in action, credits and demands" of the assignor against the assignee, and it was held that oral testimony was not admissible to establish the fact that there was an agreement to omit a certain demand from the contract. The release in that case was held to be a contract, the terms of which could not be contradicted by oral testimony. The receipt in the instant case, like the one involved in the case of *National Trust & Credit Co.* v. *Polk, supra,* does not constitute the sole evidence of the contract between the parties as to the transaction which

formed the basis of the consideration for which the money was paid. The chancellor did not commit error in admitting testimony in explanation of the application by the parties of the $1,600 payment for which the receipt was given.

It is also contended that the chancellor committed error in admitting the testimony of appellee and his wife of transactions with L. J. Smart in violation of § 5154 of Pope's Digest and Schedule § 2 of the Constitution of 1874. Both appellee and his wife were permitted to testify to the agreement and application of payments made on February 8, 1939. While appellants did not object to such testimony on this ground at the trial, it is pointed out that such objection is not necessary in view of our holding in the case of *Campbell, Administrator,* v. *Hammond,* 203 Ark. 130, 156 S. W. 2d 75. This section of the statute provides: ''In civil action, no witness shall be excluded because he is a party to the suit or interested in the issue to be tried. Provided, in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party. Provided further, this section may be amended or repealed by the General Assembly. Sched., § 2, Const.'' We have held that this statute applies to those who are technically parties to the suit, and cannot be extended to parties interested in its result. *McRae* v. *Holcomb,* 46 Ark. 306; *Stanley* v. *Wilkerson,* 63 Ark. 556, 39 S. W. 1043; *Smith* v. *North Louisiana Sanitarium,* 181 Ark. 986, 26 S. W. 2d 97.

Under the above statute we are, therefore, not permitted to consider the testimony of appellee, but not so as to his wife. Mrs. Owen, while interested in the result of the suit, is not a party. In this connection she testified she was present on February 8, 1939, when L. J. Smart came to the home of Mr. and Mrs. Owen for a settlement. She kept the books for her husband. She also testified that L. J. Smart wanted to release his plow

tools, livestock and farming equipment so he could go ahead next year, and requested that the payments of $1,600 and $550 be applied first to an extinguishment of these securities with the balance to be credited on the notes secured by the deed of trust of February 10, 1937. She also testified that Mr. Smart figured up the interest on the notes which were paid, and that she marked same paid and surrendered same together with the two mortgages. There are many facts and circumstances which tend to corroborate this testimony of the wife of appellee.

Audie Smart, administratrix, testified that her husband brought the mortgages and notes home on February 8, 1939, and put them away. She had them in her possession at the trial, and they were introduced in evidence as exhibits to her testimony on cross-examination. When the $1,600 payment was made on January 25, 1939, none of the notes given under the deed of trust of February 10, 1937, was due. On the other hand, the $1,000 note of February 10, 1938, and the $550 note of June 6, 1938, were both past due. L. J. Smart borrowed money annually to finance his farming operations and secured such loans by mortgages upon his farming equipment, livestock and crops. 'It was perfectly reasonable that L. J. Smart should prefer to release the lien on his farming equipment on February 8, 1939, so that he could finance his farming operations for that year.

On March 18, 1942, L. J. Smart paid the balance due on the $200 due February 10, 1940, which had been credited with a payment of $82.65 in the settlement of February 8, 1939. This was more than three years after the settlement, and this note was surrendered. His wife paid three more of the notes after his death and the settlement of February 8, 1939, seems to have been unquestioned and acquiesced in by the parties for more than five years. Appellants have made no showing that the credits entered February 8, 1939, were derived from any other source than payments of $1,600 of January 25, 1939, and $550 in October, 1938, nor have they offered to restore the valuable securities released by appellee under that settlement. It would be highly inequitable under these circumstances to now require appellee to apply the entire

$1,600 payment to the notes secured by the 1937 deed of trust.

We find it unnecessary to determine whether the notes given under the 1938 chattel mortgage and deed of trust were secured by the 1937 deed of trust. If these notes were not secured by the 1937 deed of trust and the $1,600 was accepted pursuant to an agreement that it be applied on the twelve land notes, as found by the chancellor, this did not preclude a different appropriation of the payment by the parties two weeks later as disclosed by the evidence. In discussing the application of payments made upon mortgages at 41 C. J., p. 792, it is said: "The parties may agree as to the application of a payment, and may, by agreement withdraw a payment once credited on the mortgage and apply it otherwise, provided no third person is prejudiced thereby." No payments were actually credited on the notes and deed of trust of February 10, 1937, when the receipt was issued on January 25, 1939. The preponderance of the evidence supports the findings of the chancellor that the $1,600 payment was actually applied in accordance with the agreement of February 8, 1939, and that such appropriation was acquiesced in by all the parties.

The decree is accordingly affirmed.