MEERS *v.* POTTER.

4-7693                                              188 S. W. 2d 500

Opinion delivered June 25, 1945.

*E. G. Ward,* for appellant.

*T. A. French,* for appellee.

MILLWEE, J.   James Walters, a citizen and resident of Piggott, Arkansas, died intestate October 8, 1943, survived by the following heirs: Sudie Potter, Eva W. Meers, and Ida Penick, his children, and Harold Walters, Mary Frances Payne, Oscar James Little, Robert Little, and Jan Rose Slagle, his grandchildren. At the time of his death, James Walters was the owner of his home in Piggott and a small amount of personal property. His wife predeceased him in the fall of 1939. Appellees, Sudie

Potter and M. H. Potter, are the daughter and son-in-law of said James Walters.

After the death of his wife, appellees moved into the home of James Walters where they resided for a period of eight months, when they moved back to their own home. In 1941, another family moved into the home for a short period.

Following the death of James Walters, appellee, Sudie Potter, attempted to secure conveyances from the other heirs of their interest in the property of James Walters on the condition that she, Sudie Potter, pay all debts of the estate. All the heirs except appellants executed such deeds and upon their refusal to do so, appellee, Sudie Potter, was granted letters of administration on January 6, 1944, and proceeded to administer the estate for the benefit of all of the heirs.

On February 29, 1944, appellee, M. H. Potter, doing business as Potter's Drug Store, filed his claim against the estate for $274.39, for merchandise and advances made to James Walters in payment of water, lights, taxes and other accounts from November 9, 1939, to October 14, 1943. On March 3, 1944, appellee, Sudie Potter, filed her claim against the estate for $835 for the care of James Walters from October 8, 1940, to October 8, 1943, at the rate of $6 per week, except for a 13-week period in 1941 in which claim was made at the rate of $1 per week. Appellants filed their exceptions to these claims which were approved by Sudie Potter as administratrix of the estate.

At a hearing in probate court on January 30, 1945, the claim of M. H. Potter was allowed in the sum of $140.24, the court excluding all items furnished prior to three years next before the death of James Walters on October 8, 1943. The claim of Sudie Potter was allowed in full. Appellants have appealed from the allowances so made.

James Walters was actively engaged in concrete construction work in Piggott for more than 30 years. Following the death of his wife in 1939, he attempted to continue this work for a time, but because of his age and

ill health he was unable to earn any substantial income. According to the testimony on behalf of appellees, he was almost solely dependent upon appellee, Sudie Potter, for the necessities of life for three or four years prior to his death.

Mary Frances Payne, a granddaughter of deceased and deputy circuit clerk for several years, testified that she saw her grandfather daily, and that he was not in good health the last three or four years of his life; that her aunt, Sudie Potter, furnished his meals, taking them to his home when he was unable to come to the home of appellees, and cared for his clothes and laundry after the death of her grandmother. Deceased told witness on many occasions that he meant for Sudie Potter to be paid for looking after him. She also testified that her grandfather told her that he did not make enough money to pay Sudie Potter, but he meant for her to be paid after his death.

As to the claim of M. H. Potter, Mary Frances Payne, upon examination of the itemized claim, testified that she knew that her grandfather obtained the advances and merchandise represented by the claim and that her grandfather had told her on many occasions that he wanted these items paid out of his home. On cross-examination she said that, while she was not present when all the purchases listed on the claim were made, she knew about most of them and that her grandfather would tell her when her uncle had paid light, water, coal and other bills.

Similar testimony was given by M. H. Potter as to the services performed by his wife in connection with the care of her father. He also testified that there was an agreement and understanding between James Walters and Sudie Potter for her to receive compensation for such services. This agreement was made in his presence and, according to the understanding between them, she was to receive the balance of the estate after payment of all debts. This agreement was confirmed by deceased, according to this witness, about three or four weeks prior to his death.

Robert Little, a grandson of deceased, who lived in Fort Worth, Texas, has made annual visits to Piggott at Christmas for the past ten years. On these occasions he would visit James Walters. On his last visit prior to the death of his grandfather, he told witness that he wanted Sudie Potter to be paid for taking care of him.

Appellant, Eva W. Meers, who resides in Arizona, testified that she was sure there was no agreement between appellees and her father that they be paid for their services. This witness had not seen her father in 15 years and corroborated the testimony of witnesses for appellees as to the services rendered by Sudie Potter. She also testified that she and her brother had rendered services to her father and paid his debts when they resided in Kentucky more than 45 years ago without expectation of repayment. Several letters from her sister, Sudie Potter, are attached to her deposition. These letters set out in considerable detail the services performed by Sudie Potter in the care of her father. In one of the letters she stated that she would have done these things if she had known she would never get a cent for it.

Appellant insists that the court erred in allowing the claim of Sudie Potter for the following reasons: (1) There is a lack of evidence to establish said claim for care and services; (2) The evidence offered on behalf of appellees fails to overcome the legal presumption that such services, if any, were furnished and performed because of the family relationship.

It is first insisted that it was error to permit M. H. Potter to testify about the alleged agreement between deceased and Sudie Potter, and that his testimony for this purpose was incompetent under § 5154 of Pope's Digest and Schedule, § 2, of the Constitution of 1874. It has been repeatedly held that this statute applies only to those who are technically parties to the suit, and is not applicable to parties merely interested in its result. *McRae v. Holcomb*, 46 Ark. 306; *Smart, Administratrix, v. Owen, ante,* p. 662, 187 S. W. 2d 312. In construing the statute in *McRae v. Holcomb, supra,* this court said: "The constitution establishes a general rule that makes

all persons who are of sufficient intelligence and not otherwise disqualified, competent witnesses, irrespective of their participation in the suit, or their interest in the result. But to this general rule there is one exception, viz: Where the action is by or against an executor, administrator, etc., and the witness is a party to the record, he shall not speak of personal transactions with the deceased, where, by the nature of the case, the privilege of testifying cannot be reciprocal. But mere interest in the issue to be tried does not disqualify." M. H. Potter is not a party to the claim of Sudie Potter, and while it is true that he is interested, the statute does not render his evidence incompetent, as to the claim of his wife.

It is well settled by the decisions of this court that, in the case of a child rendering domestic services to a parent, there can be no recovery unless there is a contract, either express or implied, to pay for such services. The rule is stated in *Williams* v. *Waldon,* 82 Ark. 136, 100 S. W. 898, as follows: "The presumption is that services rendered by members of the same family, and especially between father and son, are gratuitous. Such services are enjoined by reciprocal duties of the family relation, and are always presumed to have been prompted by natural love, rather than by the hope of pecuniary reward. Courts are reluctant to infer a pecuniary recompense from the performance of filial or paternal duties such as humanity enjoins. Hence the burden is upon him who claims a money recompense for personal services performed, whether voluntarily, or upon the request of the other, to establish a contract expressed or implied, for such consideration."

In the case of *Nissen* v. *Flournoy,* 160 Ark. 311, 254 S. W. 540, where a sister filed a claim against her brother's estate to recover for taking care of him, it was held error for the trial court to instruct the jury that the claimant could only recover upon an express contract. Justice HART said in that case: "No hard and fast rule can be laid down, and every case must be governed by its peculiar circumstances. It is incumbent upon the claimant to show that, at the time the services were rendered, it was expected by both parties that she should receive compen-

sation, but she may show this by circumstantial as well as by direct evidence. All the surrounding circumstances under which the services were performed may be proved."

In attempting to estimate the sufficiency of the evidence to establish the agreement to pay for the services performed by Sudie Potter, we are mindful of the opportunity for fraud and the close scrutiny judges must exercise in gauging such testimony. In the performance of this solemn duty the trial judge is in a better position to determine the credibility of the witnesses, and to appraise the circumstances, than is this court on appeal. After careful consideration of all the evidence on this issue, we cannot say that the finding of the trial court is against the preponderance of the evidence. We think the proof is sufficient to show a contract, implied if not express, that Sudie Potter should be paid for her services.

Appellants also insist that the trial court erred in admitting the testimony of M. H. Potter to establish his own claim against the estate. However, we think there is sufficient evidence, aside from that of M. H. Potter, to establish his claim. Particular exception is made to the allowance of the item of $10.10 for payment of real estate taxes on October 14, 1943, six days after the death of James Walters. Payment of these taxes might have avoided delinquency and irreparable loss to the estate. Such payment was for the benefit of all the heirs, including appellants, and we find no error in allowance of this item.

Finding no error, the judgment of the probate court is affirmed.