HARRIS *v.* HARRIS, ADMINISTRATRIX.

5-812                                    286 S. W. 2d 849

Opinion delivered February 13, 1956.

*C. M. Martin,* for appellant.

*L. B. Smead,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellant, Dewey Harris, and Bennie Harris were the parents of Birdie Harris, who was killed in an automobile collision July 11, 1954. Dewey Harris and Bennie Harris have been divorced for some eight (8) years. Their daughter, Birdie, had also been married, was divorced December 15, 1950, and was 24 years of age at the time of her death. She had no children. A damage suit following the automobile mishap, and filed by her administratrix [her mother], resulted in a recovery for Birdie's estate of $4,000. Birdie died intestate and left no other estate. December 23, 1954, appellant [as Birdie's father] filed a petition in the Probate Court asking that the assets of the estate be disbursed equally between him and Bennie, and that the administration be closed. January 24, 1955, on petition of appellee, a partial distribution was made, $1,000 being paid to Dewey Harris and $1,000 to Bennie Harris, leaving a balance of $2,000. On February 17, 1955, Bennie Harris filed a claim against her daughter's estate for $3,000 and on a hearing the court allowed her $2,490. This appeal followed.

For reversal appellant relies on the following five points: 1, 2 and 3, in effect, question the sufficiency of the evidence and ''4. Because the testimony of Bennie Harris, Administratrix, was incompetent and inadmissible for the purpose of establishing her claim against the estate of Birdie Harris, deceased. 5. Because the testimony of Frank Landers was not sufficient to establish the claim of Bennie Harris, Administratrix, against the estate of Birdie Harris, deceased.''

Appellee based her claim against her daughter's estate on the following itemized account: ''For expenditures on behalf of the decedent during the period from September, 1951, to May, 1954, during the school year,

only: Lunch—$10.00 per mo., Incidentals—$10.00 per mo., Food & Lodging—$30.00 per mo., Clothing & Shoes —$20.00 per mo., Books—$5.00 per mo., Medical & Dental —$5.00 per mo., Total—$80.00 per month.

"Total expenditure for 27 months @ $80.00 per month—$2,160.00.

"For expenditures on behalf of the decedent during the period September, 1951, to May, 1954, during vacation only: Incidentals—$10.00, Food & Lodging—$30.00, Clothing & Shoes—$10.00, Medical & Dental—$5.00, Total $55.00.

"Total expenditure for 6 months @ $55.00 per month, $330.00.

Total Expenditure................$2,490.00."

There was evidence to the effect that Birdie, following her divorce December 15, 1950, had lived with her mother continuously until her accidental death July 11, 1954. During this period she went to school and it does not appear that she earned anything. Her mother [67 years old] received $75 a month from the government and earned $40 per month working for Frank Landers. Her mother testified that Birdie promised to pay her [Bennie Harris] for her [Birdie Harris'] expenses while she lived with her mother. On direct examination Birdie's mother testified:

"Q. Actually, Bennie, did Birdie finish school in May of 1954? A. Yes, sir, and she told me she was going to pay me—we made an agreement— MR. MARTIN: We object to any agreement between the Administratrix and the deceased. MR. ROWAN (continuing): Q. During the time she went to school, from September, 1951, until May, 1954, when she finished, who paid her expenses? A. Me."

Appellant's contention that this evidence of Birdie's mother was inadmissible as falling within the terms of Section 2 under "Schedule" to the Constitution of Arkansas, commonly referred to as the "Dead Man's Stat-

ute,'' must be sustained. It appears, however, that appellant brought out on his cross-examination of Bennie Harris the same testimony, in effect, that he complained about, as indicated, on her direct examination. He, therefore, waived the incompetency of this testimony, *Smith, Administratrix* v. *Clark,* 219 Ark. 751, 244 S. W. 2d 776. On Bennie Harris' cross-examination she testified:

''Q. Did you get a note for any of this money you gave her? A. I didn't have to because she told me she was going to give me back every cent. Q. How was she going to pay it back? A. Get a job and pay me back. . . . Q. Now why do you claim pay for Birdie after she is dead—why didn't you make the claim while she was living? A. I did make it—and she told me she was going to pay it when I put her through high school and she could get a job and make some money.'' . . .

In addition to the above testimony Frank Landers testified: . . . ''That she [Bennie Harris] works for his wife in the house and has worked for her since 1951. That he knew her daughter, Birdie Harris. Q. Were you aware, or did you know any expenditures made by Bennie Harris for the purpose of educating Birdie Harris? A. Yes, sir. Q. How did you know of it? A. Well, a number of times Bennie would get money from me to take care of Birdie's school bills. Q. Did you hear any conversation between Birdie Harris and Bennie Harris regarding this matter? A. Yes, sir. Q. Tell the court what they were. A. Well, at one particular time, Birdie got off the bus and came in my house and asked her mother for some money for books, and her mother said she didn't have the money, and that it was costing a lot to send her through school, and she said—she didn't call her Mother, she called her Bennie,—and she said: 'Bennie, when I get through school I am going to pay every bit of this money back.' '' . . .

The cause comes to us for trial de novo, just as in chancery appeals. The burden was on Birdie's mother to establish her claim. ''It is incumbent upon the claim-

ant to show that, at the time the services were rendered, it was expected by both parties that she should receive compensation, but she may show this by circumstantial as well as by direct evidence. All the surrounding circumstances under which the services were performed may be proved, *Meers v. Potter,* 208 Ark. 965, 188 S. W. 2d 500.

After a careful review of all the testimony, some of which is contradicted by appellant, we have reached the conclusion that the preponderance of the testimony does not support a claim of appellee for more than $2,000. The claim will, therefore, be reduced to $2,000 and affirmed for this amount. All costs in the trial court and here to be paid out of the estate.

Justices Smith and Robinson dissent.

George Rose Smith, J., dissenting. Our law sensibly frowns upon attempts to recover compensation for services rendered to the claimant's deceased parent or child. "Such services are enjoined by the reciprocal duties of the family relation, and are always presumed to have been prompted by natural love, rather than by the promise or hope of pecuniary reward." *Williams v. Walden,* 82 Ark. 136, 100 S. W. 898. The law may imply a promise to pay if the services are so extraordinary that they cannot be attributed to filial or parental devotion and would be rendered only with the expectation of compensation. But in the case of ordinary services the burden is on the claimant to prove a contract for reimbursement. *Lineback v. Smith,* 140 Ark. 500, 215 S. W. 662.

In this case the decedent was a young girl who, after an unsuccessful marriage, returned to live with her mother while she finished her schooling. The mother's claim is for board, room, clothing, and incidentals which she furnished during her daughter's school days. There is nothing extraordinary about services such as these. Probably the commonest example of unselfishness to be found is the self-denial undergone by parents in order to give their children an education. Most parents would

be affronted if the law implied an expectation of pecuniary reward on their part.

Hence the appellee's claim must rest upon proof of an express contract for reimbursement. All that is shown is that on two occasions the daughter said that when she finished school she was going to get a job and pay back every cent. It seems clear to me that such a voluntary unilateral promise does not create a contract. It is not suggested that the appellee supplied her daughter with the necessaries of life only because repayment had been promised. To the contrary, the appellee admits that she brought up eight other children without asking compensation for their food and shelter. In my opinion the majority decision is contrary to many precedents in our Reports and will encourage the filing of fictitious claims. I should add that the equities as between the appellee and her divorced husband, the appellant, are not our responsibility. It is probably true in most cases that all who share equally under the law of descent and distribution are not equally deserving as a matter of abstract justice.

ROBINSON, J., joins in this dissent.