412

PIERCE *v.* PIERCE.

5-2909                                              366 S. W. 2d 276

Opinion delivered April 8, 1963.

*Felver A. Rowell, Jr.,* for appellant.

*Williams & Gardner,* for appellee.

PAUL WARD, Associate Justice. Prior to July 21, 1957 M. H. Pierce and Mary C. Pierce owned and operated, as partners, the M. H. Pierce Lumber Company. On the date above mentioned Mary C. Pierce died testate and Joe S. Pierce (her son) was duly appointed executor of her estate. Later M. H. Pierce (after operating the lumber company for an undisclosed period of time) died testate and his estate is now being administered by his wife as executrix.

On January 24, 1961 Joe S. Pierce (as executor) filed a verified claim for $7,953.14 against the M. H. Pierce estate. The claim was itemized and explained as follows:

"50 per cent of the truck and car account of
M. H. Pierce Lumber Co., a partnership          $1,092.94

"50 per cent of the undivided timber account
of M. H. Pierce Lumber Co., a partnership          6,860.20
                                                 _____
"Total                                          $7,953.14

"This balance due the Mary C. Pierce Estate is reflected by the books of M. H. Pierce Lumber Company, a partnership, and by the books of M. H. Pierce, an individual doing business as M. H. Pierce Lumber Company, and can be substantiated from same."

The claim was disallowed by the executrix of the M. H. Pierce estate. It was then presented to the Probate Court and was there allowed by order dated May 12, 1962. From that order comes this appeal.

The only witness to testify was Joe S. Pierce, the executor of the estate of Mary C. Pierce, and the only testimony material to the issue here raised is hereafter set out.

"Q. Have you had an opportunity to examine the records of the partnership of M. H. Pierce Lumber Company?

"A. Yes, sir.

"Q. Are they in the courtroom?

"A. Yes, sir.

\* \* \*

"Q. Mr. Pierce, I hand you here what purports to be a ledger and ask you if you can identify it?

"(At this time the witness is handed ledger book to examine.)

"A. That's a ledger of M. H. Pierce individual. M. H. Pierce Lumber Company and it is individual.

"Q. Will you examine that and see if you can find anything in there indicating any indebtedness owed by M. H. Pierce to the Mary C. Pierce estate?

"MR. ROWELL: Objection your Honor. The witness has stated that's a personal journal of Mr. M. H. Pierce, and all those entries in that book as I understand it and my knowledge of the books are made in the handwriting of M. H. Pierce individually, and he can't testify to that.

"THE COURT: Even though they were, these are not transactions the witness has had with the deceased."

At the top of page 90 of the ledger appears the following:

"1957 Mary C. Pierce Estate

Acct. Payable"

Just beneath the above appears these two lines:

| "Aug. 3 | Cars and Truck | $1,092.94 |
| "Aug. 3 | Band Timber | 6,860.20" |

Referring again to the claim

"Q. Has it been paid?

"A. No."

The point on which appellant places most emphasis for a reversal is that the court erred in allowing the ledger to be introduced in evidence. In support appellant relies on Section 2 of the Schedule of the State Constitution which, in material parts, reads

". . . in actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward. . . ."

It is first argued, and we agree, that the above statutes applies to a technical party such as an administrator. See: *Smart, Administratrix,* v. *Owen,* 208 Ark. 662, 187 S. W. 2d 312, where, in speaking of Schedule, § 2 of the Constitution, we said:

"We have held that this statute applies to those who are technically parties to the suit. . . ." (Citing cases.) The technical party referred to there was the administratrix. It appears, however, to be the contention of appellant that the ledger (or the introduction of the ledger by the executor) in some way constituted a *transaction with the testator*—that is M. H. Pierce, deceased.

After careful consideration of this issue and of appellant's contentions, we are forced to the conclusion that the ledger was properly introduced in evidence. We find nothing in the testimony of Joe S. Pierce (as previously set out) which refers to any transaction he had with M. H. Pierce during his lifetime. It is only testimony of such a transaction that the statute forbids. This was clearly stated in *Strayhorn* v. *McCall,* 78 Ark. 209, 95 S. W. 455 in these words: "It is only as to 'transactions with . . .' the deceased that the opposite party is rendered incompetent to testify." This restrictive meaning of the words "transactions with" was impressively indicated in the early case of *Giles, Adm'r.* v. *Wright,* 26 Ark. 476. The Court there was called on to interpret the meaning of Article 7, Section 22 of the 1868 Constitution which is the same as Schedule § 2 of our present constitution. The court there said:

"It is plain that it is not the design to exclude the testimony of such parties, as to all matters in controversy, in which the testator, intestate or ward, had been interested, or in any manner connected with, but only in relation to *strictly personal transactions, or such as were directly and personally with him,* and where in the nature of the case, the privilege of testifying could not be reciprocal and of mutual advantage." (Emphasis added.)

To put a more liberal interpretation on the statute involved would not seem to be in line with modern enlightened thinking. Robert A. Leflar, former Dean of the University of Arkansas School of Law, in an article published in 2 Ark. L. Rev. 26 at page 36 said:

"The 'dead man statute' is a relic of an almost bygone era in the law, and it may be confidently expected that it will be erased from the statutes in the not-far-distant future. In this respect it is like the disqualification of convicted felons as witnesses, which persisted in Arkansas until 1913. Under each disqualification there developed a great mass of cases, making learned distinctions and dwelling on minute differences. In each instance the courts were seeking to limit as narrowly as possible a rule which originally made some sense, but whose reasonable

416

basis could better be cared for in modern times by letting the jury consider the credibility of the evidence fully rather than by excluding it altogether. Both rules tended toward the concealment of the truth rather than toward its discovery.''

It is also contended by appellant that appellee failed to meet the burden of proof necessary to establish the claim. This contention is not tenable in view of the conclusion we have previously reached.

Affirmed.