[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The first count of the plaintiff's amended complaint in this action alleges that her mother, Lillian Breen, breached an oral agreement between them that the plaintiff would receive a one-half interest in the family home under her mother's will in consideration for her continuing to live with her and assisting and caring for her and paying the household expenses. The second count of the complaint incorporates the facts alleged in the first count and claims damages for the reasonable value of the services provided to the defendant's decedent.
The plaintiff testified that she was the only child of her mother's marriage to John Parsons and that Frank Breen, her half brother, was the only child of her mother's subsequent marriage to Charles Breen. Charles and Lillian Breen purchased a house known as 9 Heather Lane in East CT Page 9502 Hartford in 1970 where Doreen lived until 1979 when she moved out and lived on her own for two years until 1981 when she moved back into the home where she continued to reside until shortly after her mother's death on January 1, 1992.
She stated on cross-examination that she moved back home in 1981 because she had been living in an apartment and she "had a lot of bills." Thereafter she continued to have financial difficulties which had still not been resolved at the time of her mother's death and that she was therefore not in a position to make any other living arrangements during the eleven year period that she was living at home prior to her mother's death.
She testified that after she moved back to the house she continued to work full time as a hostess and cashier at the Summit Hotel until she was laid off in March of 1990, and that during that period her mother was in good physical health and was fully capable of taking care of her own physical needs.
She recalled that she paid rent to her mother during that time but that she stopped doing so at some point, and that she spent time after work and on weekends doing housework, cleaning, lawn and yard work, interior repairs and other household tasks.
Although she could not fix the time, place, or express content, of any oral agreement as alleged in the complaint, she testified that at various unspecified times after 1981, her mother made statements to the effect that "the house would be hers if she was to help out" and that she assumed that would be the case in the event of her mother's death. She also testified that it was on the basis of that assumption that she signed a mortgage note for $40,000 on the house in 1986 with Frank Breen even though they were both eventually unable to continue the payments and the mortgage was subsequently paid off by a relative.
In 1990 the plaintiff's mother was diagnosed as having cancer and underwent the removal of a lung in August of that year, and because the plaintiff did not go back to work until November she was able to care for her mother on a full time basis at that time. In September of 1991, the cancer had spread to her liver and although a hospice worker spent a few hours a week with her, Doreen was principally responsible for CT Page 9503 her mother's care thereby permitting her to remain at home rather than having her hospitalized.
The plaintiff called as a witness the decedent's attorney, John J. O'Neil, who had drafted her will which was executed on July 14, 1978, under which Frank Breen was the sole beneficiary of her estate. He testified that she called him on the telephone shortly before her death, and after stating that she cared a great deal about both of her children, she said that "she was going to put Doreen back in the will" or words to that effect.
He thought that she might have been referring to making her the executrix of the will, and recalled that she said that she and her daughter had been "reconciled" and that Doreen was "helping her out" at the time. He told her that she should not have the plaintiff bring her to his office if she was to be included in the will but that he did not hear from her thereafter.
The defendant offered in evidence by way of impeachment portions of the testimony of the plaintiff at a deposition taken about a month before the trial (Defendant's Exhibit 5) in which she stated (p. 47) that she did much of the work "[b]ecause it had to be done" and that she did it on her own. She also stated (p. 54) that the work she was doing at home while her mother was unable to care for herself was done "[b]ecause I wanted to and because my mother couldn't do it."
Her deposition testimony also included a statement (p. 34) that after Frank got married and moved out of the house the work that she did was not done so that she could continue to live there and was not done because of any specific agreement that she had with her mother. She also testified at the deposition (pp. 62, 63) that the only time she could recall her mother promising to give her a one-half interest in the house was when she first bought it in 1970 and she was not sure that it was anything more than a statement of her intention rather than an express promise to do so.
A claim against the estate of a deceased relative for care and services "should be carefully scanned by the court [and can] be established only upon clear and satisfactory proof that the services were rendered under a mutual understanding or agreement of the parties that they would be CT Page 9504 paid for." Hoskins v. Saunders, 80 Conn. 19 at 21. There is a legal presumption that services rendered by a daughter for her mother are rendered without expectation of compensation and a contract for payment will be implied only if those services are of such an unusual character that a parent would not ordinarily expect a child to render such services without some kind of compensation. Craig v. Hickman, 447 S.W.2d 120,123 (Ark. 1969).
Where services are performed only in the hope of inheriting the parent's property and `without other expection of reward' the plaintiff cannot recover. Downey v. Guilfoyle,96 Conn. 383, 386. Mere statements by the deceased of her "intention to make a will are not sufficient proof to warrant the inference that a contract of any kind was made." Estate of Spaulding, 543 N.W.2d 980, 984 (Ill.App. 1989).
Mere expressions by the deceased or expectations on the part of relatives who rendered personal services to her before her death do not constitute or imply a contract entitling relatives to recover for such services from the estate of the decedent. West v. West, 229 S.W.2d 451, 453 (Ky.App. 1950). In considering the testimony of a plaintiff as to her recollection of the statements of the decedent, a distinction must be made between those which are meant and understood to be merely an intention to provide for her and those which reasonably raise "an expectation of compensation for services rendered, and often a change of a word or turn of a phrase may alter one into the other . . .," and even where such testimony is honestly given, it may well be influenced by the obvious self-interest of the witness. Howd v. MacGregor, 102 Conn. 331,333-34.
The necessary elements that the plaintiff must prove in order to recover for the reasonable value of her services under the second count of the complaint are that the services were performed in consideration of, and in reliance upon her mother's promise to compensate her, and she must also prove the value of her services. Downey v. Guilfoyle, 96 Conn. 383,386-87. The element of reliance is not established for purposes of a quantum meruit claim where the plaintiff did not relocate, give up her career or disrupt her own life in order to take care of her mother, and where she appears to have benefited as much as her mother from their living arrangement, her "services should be regarded as having been rendered in CT Page 9505 lieu of a monetary contribution toward household expenses, not in consideration of an implied obligation by [her] mother to reimburse [her]." Matter of Estate of Wilson, 579 N.Y.S.2d 779,781-82 (N.Y.App. 1991).
For the foregoing reasons, the court finds that the plaintiff has failed to establish the existence of the oral agreement alleged in the first count of the plaintiff's amended complaint by the clear and satisfactory proof required for such claims and has also failed to establish the essential elements of her claim under the theory of quantum meruit as alleged in the second count.
Accordingly, judgment is entered in favor of the defendant against the plaintiff on both counts of the complaint.